UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLTON HOOKER, JR.,

    Plaintiff,

v.                                     Case No.: 8:18-cv-696-T-33TGW

ROBERT WILKIE,
SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS, and
SUZANNE KLINKER,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Robert Wilkie, as Secretary of the Department of Veterans Affairs, and Suzanne Klinker's Motion to Dismiss Amended Complaint (Doc. # 20), filed on June 29, 2018. Pro se Plaintiff Carlton Hooker, Jr. responded on the same day, (Doc. # 22), then filed an amended response on July 13, 2018 (Doc. # 38). For the reasons that follow, the Motion is granted, and the case is dismissed.

**I.**    **Background**

Hooker is no stranger to the federal courts. Since his employment with the Bay Pines Veterans Affairs Healthcare System ended in 2010, he has filed numerous lawsuits against the Department of Veterans Affairs and various Bay Pines

1

employees about his termination. See, e.g., Hooker v. Sec'y, Dep't of Veterans Affairs, No. 8:11-cv-1230-T-33EAJ (M.D. Fla. June 3, 2011); Hooker v. Shinseki, No. 8:12-cv-2759-T-30TBM (M.D. Fla. Dec. 7, 2012); Hooker v. Shogren, No. 8:13-cv-1655-T-35TBM (M.D. Fla. June 25, 2013); Hooker v. Shinseki, No. 8:14-cv-333-T-30AEP (M.D. Fla. Feb. 10, 2014); Hooker v. Shinseki, No. 8:14-cv-344-T-30EAJ (M.D. Fla. Feb. 10, 2014); Hooker v. Hopkins, No. 8:15-cv-750-T-30TGW (M.D. Fla. Mar. 30, 2015); Hooker v. Mulcahy, No. 8:15-cv-1062-T-23TBM (M.D. Fla. May 4, 2015); Hooker v. Shulkin, No. 8:17-mc-104-T-17TGW (M.D. Fla. Sept. 25, 2017).

Hooker's frequent filings led to his classification as a vexatious litigant on April 1, 2015. Hooker v. Hopkins, No. 8:15-cv-750-T-30TGW (Doc. # 4). The order deeming Hooker a vexatious litigant "enjoin[ed] him from filing any future action related to his employment or termination from the Department of Veterans Affairs without permission from the Court." (Id. at 1).

Hooker was granted permission to file a civil rights discrimination lawsuit on March 22, 2018, based on the representation that the new action did "not involve [Hooker's] former employment with the Department of Veterans Affairs." (Doc. # 1 at 1; Doc. # 2). So, Hooker initiated

2

this action and his Complaint was filed on April 30, 2018. (Doc. ## 1, 7). Then, on May 18, 2018, Hooker filed an Amended Complaint. (Doc. # 10).

The Amended Complaint states that Hooker "is a civilian, and 60% Serviced Connected Disabled United States Army Veteran, and former Bay Pines VA Police Officer, and Applicant for Employment." (Id. at 4). On February 17, 2016, Hooker attended a V.A. Town Hall Meeting. (Id. at 7). Because of Hooker's behavior at that meeting, V.A. police officers filled out a police report accusing Hooker of "Disorderly Conduct" — an accusation that Hooker "admits." (Id.). Yet, Hooker also alleges the police report was false and "created with the sole purpose of banning him from Bay Pines." (Id.).

On February 25, 2016, Klinker — the Director of Bay Pines — allegedly "banned [Hooker] from the entire Bay Pines VA Healthcare System" "with the exception of personal and or emergency medical treatment." (Id. at 8, 11). Then, in December of 2016, "the Assistant Secretary for Operations, Security and Preparedness, Mr. Kevin Hanretta, issued [Hooker] a 'Restricted Access Letter' which placed [Hooker] in a 'No Engagement' status restricting [him] from any engagement with the Bay Pines VA Healthcare System for life." (Id. at 7).

Hooker alleges that "this restriction denies him a fair opportunity to apply, compete, and obtain any type of employment at [Bay Pines]." (Id.). Indeed, he asserts "that the sole purpose of the February 25, 2016 ban . . . which was upgraded to a lifetime ban by Mr. Kevin Hanretta was to personally injure [Hooker's] employment prospects within the Bay Pines VA Healthcare System." (Id. at 10). He insists this alleged intentional discrimination was "based on race (African American), color (Black), age, disability, and reprisal (prior EEO activity)." (Id. at 7). Additionally, he alleges imposition of the ban was unconstitutional because the ban was "based on information contained in a police report for which [Hooker] was never charged, fined, adjudicated guilty, or imprisoned" and "denies [Hooker] access to Federally Protected Activities, such as VA Benefits, Services, Programs, etc. at Bay Pines." (Id. at 11).

The Amended Complaint states that Hooker filed an administrative complaint with the Office of Resolution Management ("ORM") on January 6, 2017, alleging the ban was intended to prevent him from gaining employment at Bay Pines. (Id. at 7). Hooker asserts he "has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 and 1991 as amended to include having

4

exhausted all remedies thru the VAORM . . . and EEOC." (Id. at 3).

On June 29, 2018, Wilkie and Klinker filed the instant Motion to Dismiss the Amended Complaint. (Doc. # 20). Hooker has responded (Doc. # 38), and the Motion is ripe for review.

## II. **Legal Standard**

The Court construes pro se pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). But "a pro se litigant is still required to conform to procedural rules, and a district judge is not required to rewrite a deficient pleading." McFarlin v. Douglas County, 587 F. App'x 593, 595 (11th Cir. 2014).

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

> the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. **Analysis**

#### A. **Section 1981 and 1983 Claims**

The Amended Complaint mentions 42 U.S.C. §§ 1981 and 1983 vaguely in passing, rather than clearly asserting claims under these statutes. (Doc. # 10 at 3-5). To the extent Hooker is attempting to assert §§ 1981 and 1983 claims, Defendants argue these claims should be dismissed with prejudice. (Doc. # 20 at 3-11).

Defendants are correct. First, these statutes do not create causes of action against federal officers acting under color of federal law. See Osahar v. Postmaster Gen. of U.S. Postal Serv., 263 F. App'x 753, 763 (11th Cir. 2008)("Because

6

42 U.S.C. §§ 1981 and 1983 apply only against impairment of equal rights, or violations of federal or constitutional rights, under color of state law, and because Osahar complains about actions taken under color of federal law, those claims were due to be dismissed for failure to state a claim upon which relief could be granted."); Cheves v. Dep't of Veterans Affairs, 227 F. Supp. 2d 1237, 1246 (M.D. Fla. 2002)("[Section] 1983 does not apply to actions taken under color of *federal law*.").

Furthermore, Title VII provides the exclusive remedy for federal employees who wish to assert claims of discrimination. See Carter v. Sec'y of Navy, 492 F. App'x 50, 53 (11th Cir. 2012)(stating that plaintiff's §§ 1981 and 1983 claims were due to be dismissed because Title VII is "the exclusive judicial remedy for federal employees to present discrimination claims"). Therefore, to the extent Hooker was attempting to assert §§ 1981 or 1983 claims, those claims are dismissed with prejudice.

**B.   Construed Bivens Claim**

Similarly, Defendants argue that, to the extent Hooker may be trying to assert a Bivens claim, such claim should be dismissed. A Bivens claim allows a plaintiff to recover money damages or injunctive relief from federal officers for

violations of the plaintiff's constitutional rights under certain circumstances. Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017); see also Daniel v. U.S. Marshall Serv., 188 F. App'x 954, 961 (11th Cir. 2006)("The availability of a cause of action for monetary damages or injunctive relief against federal officials in their individual capacities for a violation of a federal constitutional right was established in Bivens.").

Bivens claims have traditionally only been allowed in three contexts: (1) illegal searches and seizures under the Fourth Amendment; (2) gender discrimination under the Fifth Amendment's due process clause suffered by a congressional employee who was not subject to Title VII at that time; and (3) failure to provide medical treatment to an inmate under the Eighth Amendment. Ziglar, 137 S. Ct. at 1854-55; see also Gonzalez v. Velez, 864 F.3d 45, 53 (1st Cir. 2017)(explaining that the Bivens claim was allowed for the gender discrimination case because Title VII did not cover congressional employees at that time).

Courts are hesitant to allow Bivens-type claims in new factual contexts and must consider whether there are special factors weighing against extending Bivens. See Ziglar, 137 S. Ct. at 1857 (noting that "expanding the Bivens remedy is now

a 'disfavored' judicial activity" and "that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress'" (citation omitted)).

### 1. Bivens Claim against Wilkie as Secretary of the Department of Veterans Affairs

First, Defendants contend that Hooker cannot maintain a Bivens-style claim against the Secretary of the Department of Veterans Affairs. (Doc. # 20 at 4). According to Defendants, "Hooker's Bivens claims are not cognizable against the United States because the United States has not waived its sovereign immunity with respect to constitutional torts." (Id.). The Court agrees. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

Furthermore, "[a]n extension of Bivens to agencies of the Federal Government is not supported by the logic of Bivens itself." Id. at 486 (holding that a plaintiff could not bring a Bivens cause of action for damages against the Federal Savings and Loan Insurance Corporation in its own name). This is because "the purpose of Bivens is to deter *the officer*," and "the deterrent effects of the Bivens remedy would be lost" if plaintiffs could bring damages actions directly against

federal agencies rather than individual officers. Id. To the extent Hooker was attempting to state a Bivens claim against Wilkie, as Secretary of the Department of Veterans Affairs, such claim is dismissed with prejudice.

### 2. **Bivens Claim against Klinker**

Defendants also argue that Hooker should not be able to pursue a Bivens claim against Klinker. First, Defendants insist that Klinker is entitled to qualified immunity for her alleged violation of Hooker's due process rights. (Doc. # 20 at 5).

In the Amended Complaint, Hooker alleges Klinker violated his civil rights by "bann[ing] [him] from the entire Bay Pines VA Healthcare System . . . based on information contained in a police report for which [Hooker] was never charged, fined, adjudicated guilty, or imprisoned" because that ban "denies [Hooker] access to Federally Protected Activities, such as VA Benefits, Services, Programs, etc. at Bay Pines." (Doc. # 10 at 11). In his response to the Motion, Hooker clarifies that he is alleging a violation of his due process rights under the Fifth Amendment. (Doc. # 38 at 14).

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Supreme Court has

allowed Bivens actions against defendants in their individual capacities for violations of the Due Process Clause of the Fifth Amendment." Sharma v. Drug Enf't Agency, 511 F. App'x 898, 901 (11th Cir. 2013). "As an affirmative defense, however, 'qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007)).

In order to establish a defense of qualified immunity, a government official must first demonstrate that he or she was acting within her discretionary authority. See Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003). In determining whether an official acted within her discretionary authority, courts "assess whether they are of a type that fell within the employee's job responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). So, courts "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id.

But "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." Id. at 1266 (citation omitted). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id.

Defendants insist Klinker was acting within her discretionary authority when she banned Hooker from Bay Pines. (Doc. # 20 at 6-9). They note that Klinker is Director of Bay Pines and "is responsible for ensuring the safety and security of the patients, staff and visitors at Bay Pines." (Id. at 7). So, Defendants reason, "[b]y placing limitations on [] Hooker's access to the Bay Pines VA as a result of his threatening and disruptive behavior, [] Klinker was performing her job responsibilities." (Id.). The Court agrees that Klinker issued the ban in her capacity as Director of Bay Pines using means within her power.

Hooker's argument to the contrary is unpersuasive. He argues Klinker was not acting within her discretionary authority because she "did not have the legal authority to deny [] Hooker's access to the Bay Pines VA under 38 CFR 1.218

12

— Security and Law Enforcement at VA facilities as a result of a non-substantiated claim of threatening and disruptive behavior under that authority." (Doc. # 38 at 13). Essentially, Hooker argues that, because the ban was allegedly illegal and could not be issued under the authority cited by Klinker, Klinker was not acting within her discretionary authority. But, again, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." Holloman ex rel. Holloman, 370 F.3d at 1266 (citation omitted).

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003). The Court follows a two-part analysis in determining whether qualified immunity applies. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). The first part asks "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 736 (2002)(internal quotation marks omitted)). The second part asks "whether the right was clearly established." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201

13

(2001)(internal quotation marks omitted)). "Both elements . . . must be satisfied for an official to lose qualified immunity." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)(citation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.

Defendants persuasively argue that the law was not clearly established when Klinker issued the ban on Hooker. They emphasize that Hooker "does not cite to any decisions by the United States Supreme Court, the Eleventh Circuit Court of Appeals, the federal district courts within this Circuit, or any other court that restricted access to a single VA facility is a violation of a clearly established constitutional right." (Doc. # 20 at 8). And the Court's independent review has failed to locate any Supreme Court or Eleventh Circuit precedent showing that Klinker's conduct —

banning a former employee and veteran from a single medical facility because of alleged disorderly conduct — violates Hooker's due process rights. See Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009)("In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances.").

Therefore, even assuming for the sake of argument that issuance of the ban was a due process violation, Klinker is entitled to qualified immunity.

Additionally, to the extent Hooker is trying to base his claim on the fact that the ban prevents him from obtaining employment at Bay Pines, Defendants argue the Bivens claim must be dismissed. They emphasize that Hooker "has alternative processes available to resolve his issues — the administrative EEO process and a possible Title VII claim — and indeed has availed himself of those processes many times." (Doc. # 20 at 10).

The Court agrees. As the First Circuit recently explained,

> Federal-sector employment claims are sui generis: the CSRA and Title VII, with their regulatory accoutrements, form a comprehensive remedial network fully capable of protecting federal employees against acts of discrimination in the workplace. There is no justification for implying a Bivens-type remedy.

Gonzalez, 864 F.3d at 54. Furthermore, another special factor — "the potentially enormous financial burden for the Federal Government that would result from recognizing a direct action for damages" — also weighs against extending Bivens. Patrick v. Adjusters Int'l, Inc., No. 16CV2789WFKPK, 2017 WL 6521251, at *4 (E.D.N.Y. Dec. 18, 2017)(disallowing a plaintiff contractor's Bivens-style claim for alleged discrimination and harassment by federal employees)(citation and internal quotation marks omitted).

Therefore, to the extent Hooker was trying to assert a Bivens claim against Klinker, such claim is dismissed with prejudice.

### C. Section 245 Claim

The Amended Complaint also makes reference to 18 U.S.C. § 245. (Doc. # 10 at 13-15, 18). Although Hooker does not clearly assert a count for violation of this statute, he does imply that Klinker violated this section by issuing the ban. (Id. at 13).

To the extent Hooker was attempting to assert a claim under this statute, that claim fails as a matter of law. Section 245 is a criminal statute that does not create a private right of action. See Cooley v. Keisling, 45 F. Supp. 2d 818, 820 (D. Or. 1999)("18 U.S.C. § 245 is a criminal statute and does not grant the plaintiff a private right of action. The enforcement of this provision of federal law rests in the discretion of the Attorney General of the United States."); see also Gay v. Children's Hosp. of Phila., No. 18-CV-2880, 2018 WL 3447173, at *3 (E.D. Pa. July 16, 2018)(dismissing a § 245 claim because the statute does "not provide a basis for civil liability"). Therefore, Hooker's claim under § 245 is dismissed with prejudice.

### D. Title VII Claim

As for the Title VII claim, Defendants first argue the claim must be dismissed against Klinker with prejudice because the head of the relevant agency is the proper defendant in a Title VII case. (Doc. # 20 at 11). The Court agrees that Klinker should be dismissed as a party to this action. See Canino v. United States E.E.O.C., 707 F.2d 468, 472 (11th Cir. 1983)("We conclude that the district court correctly dismissed the defendants since the head of the agency involved is the only appropriate defendant in a Title

VII action under section 717."); see also Farrell v. U.S. Dep't of Justice, 910 F. Supp. 615, 618 (M.D. Fla. 1995)("The only proper Defendant in a Title VII suit or a claim of discrimination under the Rehabilitation Act is the head of the agency accused of having discriminated against the Plaintiff."). The Title VII claim is dismissed with prejudice as to Klinker.

Finally, Defendants argue that the Title VII claim against Wilkie should be dismissed because Hooker has failed to state a claim for failure to hire. (Doc. # 20 at 11-12). "To state a valid claim of discriminatory failure-to-hire under Title VII, a plaintiff must allege and show that: (1) he was a member of a protected class; (2) he applied for and was qualified for an available position; (3) he was rejected; and (4) the defendant filled the position with a person outside the protected class." Kennebrew v. Cobb Cty. Sch. Dist., No. 1:15-cv-02495-RWS-CMS, 2016 WL 1569118, at *4 (N.D. Ga. Mar. 17, 2016)(citing Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1274-75 (11th Cir. 2002)), report and recommendation adopted, No. 1:15-cv-2495-RWS, 2016 WL 1557224 (N.D. Ga. Apr. 18, 2016).

Here, Hooker has not alleged that he applied for or was qualified for an open position. Indeed, Hooker has not alleged

18

the existence of an open position at all. As such, Hooker also has not alleged that the position was filled by a person outside of his protected class. Therefore, Hooker has not stated a claim for failure to hire under Title VII and the Motion is granted. Hooker's Title VII claim against Wilkie is dismissed without prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED**, and **DECREED**:

(1) Defendants Robert Wilkie, as Secretary of the Department of Veterans Affairs, and Suzanne Klinker's Motion to Dismiss Amended Complaint (Doc. # 20) is **GRANTED.**

(2) The case is **DISMISSED** as set forth in the Order.

(3) The Clerk is directed to terminate all pending deadlines and motions and thereafter **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 29th day of August, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE